IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


PAUL ROGERS,

      Plaintiff,

v.                                                    1:15-cv-00007 MCA/SCY

MARTIN RIVERA, ERWIN YOUNG, and
RON SAAVEDRA, in their individual
capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' *Motion for Summary Judgment Based on the Doctrine of Res Judicata* [Doc. 43]. The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed. For the following reasons, the Court **GRANTS** Defendants' *Motion*.

## I. Background

The details of the underlying action and procedural history leading to this matter are described more fully in this Court's *Memorandum Opinion and Order* filed on January 25, 2016. [Doc. 15] In short, Plaintiff Paul Rogers (Plaintiff) filed a complaint against Defendants Martin Rivera, Erwin Young, and Ron Saavedra (collectively, Defendants) in January 2014 alleging, among other things, violations of the New Mexico Tort Claims Act. [Doc. 15] An *Amended Complaint* was later filed in state court (*State Amended Complaint*). [Doc. 15] Approximately a year later, in January 2015, Plaintiff

filed a *Complaint for Violations of Constitutional and Civil Right*s in this Court (the *Complaint*).  [Doc. 1; Doc. 15]  After alleging facts which, for all relevant purposes, are the same as those alleged in his *State Amended Complaint* in state court, Plaintiff alleges that Defendants used excessive and unreasonable force against him, thereby depriving him of his constitutional rights under the Fourth Amendment of the United States Constitution.  [Doc. 1, ¶¶ 35, 39, 40]  U.S. CONST. amend. IV.  He further alleges that Defendants violated his Fourth Amendment right to be free from unreasonable and illegal seizure and arrest because they lacked probable cause to arrest him.  [Doc. 1; Doc. 15]

Five months after Plaintiff filed the *Complaint* in this Court, Defendants moved for dismissal based on the *Colorado River* doctrine and the *Younger Abstention* doctrine. [Doc. 6]  In the *Motion to Dismiss in Lieu of Answer*, Defendants argued that "the complaints are virtually identical with the exception of the detailed [F]ourth [A]mendment claims which follow the fact allegation section in the federal complaint," and that this Court should abstain from exercising jurisdiction over the matter under either the *Colorado River* or *Younger* doctrine in order to preserve judicial resources. [Doc. 6, pg. 3]  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976); *Younger v. Harris*, 401 U.S. 37, 41 (1971).  Defendants also explicitly stated that they "bring this Motion pursuant to Rule 12 and therefore reserve this right to state available affirmative defenses in an Answer, should one become necessary."  [Doc. 6, pg. 1, n.1]  Defendants went on, "However, Defendants without limitation state the following affirmative defenses: Plaintiff has failed to state a claim under which relief may be granted; Plaintiff's claims are barred by res judicata, priority jurisdiction, and

collateral estoppel; . . . ."  [Doc. 6, pg. 1, n.1]  In January, 2016, this Court held that the two suits were not "parallel proceedings," declined to apply either the *Colorado River* or *Younger* doctrines, and denied Defendants' *Motion to Dismiss in Lieu of Answer*.  [Doc. 15]

Defendants then filed an *Answer* to Plaintiff's *Complaint*.  [Doc. 18]  In the *Answer*, Defendants asserted that "plaintiff has filed this second duplicative complaint in an effort to unnecessarily increase the cost of litigating this claim which is currently be[ing] litigated in state court; therefore, the claim is filed for an inappropriate purpose" [Doc. 18, pg. 9] and that "plaintiff's state[1] claims are barred by the doctrines of collateral estoppel and res judicata."  [Doc. 18, pg. 10]

In May, 2016, Plaintiff filed a *Motion for Voluntary Dismissal of Case* in state court for dismissal of the *State Amended Complaint* with prejudice.  [Doc. 43, ¶ 6; Doc. 52, pg. 5; Doc. 43-2]  In the *Motion for Voluntary Dismissal*, Plaintiff stated that "[w]hile Plaintiff . . . and Defendants have engaged in and completed discovery in this matter, that discovery is directly applicable in the parallel federal proceeding involving the individual defendants here and Plaintiff . . . concerning the incident in question."  [Doc. 43-2, pg. 1] Plaintiff went on, "Plaintiff[] (and even the Defendants) understand[s] that the costs concerning discovery in this matter are directly applicable to the federal matter, and therefore Defendants will suffer no harm by the dismissal of the state case with prejudice."  [Doc. 43-2, pg. 1-2]  Plaintiff also stated that "[d]ismissal would actually

---

[1] This statement refers to "state" claims.  But since the statement is made as a defense against Plaintiff's *federal* claims, the Court understands it to refer to Plaintiff's federal claims.

work an advantage to Defendants since by pursuing only the federal matter, Plaintiff . . . will forgo his municipal liability claim [and other claims]."  [Doc. 43-2, pg. 2]

In an email to Plaintiff's counsel, Defendants' counsel wrote that "[w]hile my clients disagree with some of the assertions made in the motion [to dismiss], they are going to consent in the motion and have the case dismissed with prejudice."  [Doc. 52-5 (sent June 3, 10:13 a.m.]  Shortly after this email, Defendants filed their response to Plaintiff's motion to dismiss, in which they stated that "Defendants disagree with most of the basis and argument contained in [P]laintiff's motion.  However, [D]efendants do not oppose full dismissal with prejudice."  [Doc. 43-3, pg. 2 (filed June 3, 12:18 p.m.)] Plaintiff's motion to dismiss with prejudice was granted by the state court the same day. [Doc. 43-7]

In June, 2016, Defendants filed in this Court several pleadings related to a motion to compel disclosures.  [Doc. 32, 33, 34]  In July, 2016, forty-eight days after the state action was dismissed and roughly eighteen months after Plaintiff filed suit in this Court, Defendants filed the present *Motion for Summary Judgment Based on the Doctrine of Res Judicata* [Doc. 43].

In September, 2016, Plaintiff filed a *Motion to Substitute Order Granting Dismissal* in state court, in which he requested that the state court "substitute an Order of Dismissal *Without* Prejudice on the basis of mistake under Rule 1-060(b) NMRA."  [Doc. 63-1]  In his *Motion to Substitute Order Granting Dismissal*, Plaintiff argued that "while it was his intent to dismiss the state claims in order to pursue the federal case, he did not realize that dismissal 'with prejudice' would have a detrimental effect on the claims now

pending in federal court." [Doc. 63-1]  The federal case was stayed pending resolution of the motion in state court and the present motion for summary judgment.  [Doc. 60]

In February, 2017, the state court denied Plaintiff's *Motion to Substitute Order Granting Dismissal*.  [Doc. 63-1]  The state court held that "courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics" and that "Rule 60(b)(1) relief is not available for a party who simply misunderstands the legal consequences of his deliberate acts."  [Doc. 63-1]  It concluded, "It is clear to the [c]ourt that the decision to pursue the case only in federal court was a strategic decision made by counsel with the consent of the Plaintiff."  [Doc. 63-1]

## II.   Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Under this Rule, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 248. Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).  The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party

meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citation omitted).   The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324.   If the responding party fails to properly address the movant's assertion of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).   Upon a motion for summary judgment, a district court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997).

Defendants argue that this case is barred by virtue of Plaintiff's voluntary dismissal with prejudice of the state action, which was based on the same underlying incident.   [Doc. 43, pg. 2]   Plaintiff maintains that "Defendants' conduct in this case evinces the implied consent for Plaintiff . . . to proceed in the federal action, and therefore [Defendants have] waived the application of the doctrine of [claim preclusion]."   [Doc. 52, pg. 1]   The Court will begin by determining whether the elements of claim preclusion

are met, then turn to Plaintiff's acquiescence argument.  Plaintiff makes no arguments as to whether the elements of claim preclusion are satisfied.  [Doc. 52]

A.  Whether Claim Preclusion[2] Applies Here

Claim preclusion is a common-law principle that bars a party from raising a claim that was actually decided or could have been decided in a previous action that has resulted in a final and valid judgment on the merits.  Claim preclusion is sometimes described as a tool used to prevent a party from having "two bites at the apple."  *Kenmen Engineering v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002); *see also Ford v. New Mexico Dept. of Public Safety*, 1994-NMCA-154, ¶ 1, 891 P.2d 546 (1994) ("One theme permeating the law of judgments is that a litigant is ordinarily not entitled to more than one fair bite at the apple.").  At its core, the doctrine of claim preclusion is designed to ensure finality of judicial decisions.  *Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.").  The interest in finality is reflected in the sometimes harsh effects of claim preclusion, for the principle "bars not only claims that were raised in the prior proceeding, but also claims that could have been raised."  *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87.  "[F]ederal courts generally must give the same preclusive effect to a state court judgment that the judgment would have received in the courts of that state."  *Carter v. City of Emporia, Kan.*, 815 F.2d 617, 619, 622 (10th Cir. 1987) (holding that the plaintiffs' §

---

[2] "Although the parties use the term 'res judicata,' for purposes of clarity, this court employs the term 'claim preclusion' instead."  *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1202 (10th Cir. 2000) (internal quotation marks and citation omitted).

1983 claims were barred by claim preclusion by a state court judgment on state law claims arising from the same transaction); 28 U.S.C. § 1738.  Hence, the Court will assess whether claim preclusion applies under New Mexico law.  *Id.*  Because "[f]ederal law and New Mexico law are consistent on the general standards governing claim preclusion," *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, Tenth Circuit Court of Appeals opinions addressing claim preclusion are also apropos.

For the doctrine to apply, the following three elements must be satisfied: (1) the first suit must have proceeded to a final judgment on the merits; (2) the parties must be identical or in privity; and (3) the suits must be based on the same cause of action. *Pielhau v. State Farm Mut. Auto. Ins. Co.*, 2013-NMCA-112, ¶ 8, 314 P.3d 698.  Each of these elements is satisfied here.

First, "a dismissal with prejudice is an adjudication on the merits for purposes of [claim preclusion]."  *Id.*, ¶ 10 (internal quotation marks and citation omitted).  In *Kirby v. Guardian Life Insurance Company of America,* the New Mexico Supreme Court stated the reasoning behind this rule:

> A dismissal with prejudice is an adjudication on the merits only to the extent that when a claim has been dismissed with prejudice, the ... element of *res judicata* (a final valid judgment *on the merits*) will be presumed so as to bar a subsequent suit against the same defendant by the same plaintiff based on the same transaction.  If this were otherwise, plaintiffs could simply ignore dismissals and file the same claim as many times as they wished, so long as the claim never progressed to a determination of the substantive issues.

2010-NMSC-014, ¶ 66.  Since Plaintiff's *State Amended Complaint* was dismissed with prejudice, the dismissal functions as a final judgment on the merits for purposes of claim preclusion.

Second, the parties are identical.  Martin Rivera, Erwin Young, and Ron Saavedra were named as defendants in Plaintiff's *State Amended Complaint*, and in Plaintiff's federal *Complaint*.  [Doc. 43-1; Doc. 1]  Thus, Defendants here were defendants there.

Finally, the two suits arise from the same claim or "cause of action."  To determine whether both suits arise from the same cause of action, both New Mexico and the Tenth Circuit have adopted the transactional approach of the Restatement (Second) of Judgments.  *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988); *Potter*, 2015-NMSC-002, ¶ 11.  Under that approach, "two suits constitute a single cause of action if they both arise from the same transaction or nucleus of facts or from a single core of operative facts."  47 AM. JUR. 2D JUDGMENTS § 479 (updated February 2017); *Potter*, 2015-NMSC-002, ¶ 11 ("The transactional approach considers all issues arising out of a 'common nucleus of operative facts' as a single cause of action.").  "What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically," and the Court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982).  It does not matter if the suits are based on different legal theories; rather, "if they all arise from the same factual underpinnings, they must all be

brought in the same action or be barred from further consideration."  47 AM. JUR. 2D

*Judgments* § 479 (updated February, 2017).

> The present trend is to see a claim in factual terms and to make it
> coterminous with the transaction regardless of the number of substantive
> theories, or variant forms of relief flowing from those theories, that may be
> available to the plaintiff; regardless of the number of primary rights that
> may have been invaded; and regardless of the variations in the evidence
> needed to support the theories or rights.

RESTATEMENT (SECOND) OF JUDGMENTS § 24, cmt. a. (1982).  *See also id.,* cmt. c ("That

. . . different legal theories . . . may apply to a given episode does not create multiple

transactions and hence multiple claims.  This remains true although the several legal

theories depend on different shadings of the facts . . . or would call for different measures

of liability or different kinds of relief.").

Here it is clear that both actions arise from the same facts.  Of the twenty-two

"facts common to all causes of action" alleged in the *Complaint*, eighteen are verbatim

reiterations of the fact allegations in the *State Amended Complaint*; one additional

paragraph has the addition of only a few words, and only three fact allegations are new.

[Doc. 43, pg. 4; Doc. 52, pg. 6]  Both complaints are based on the same incident on

January 7, 2012 in Torrance County, New Mexico.  [Doc. 43-1 (*State Amended

Complaint*); Doc. 1 (*Complaint*)]

Based on these facts, Plaintiff alleged in his *State Amended Complaint* that

Defendants violated the New Mexico Tort Claims Act when they, inter alia, "assaulted,

battered, falsely imprisoned, falsely arrested, maliciously prosecuted, committed various

negligent acts and omissions, and committed the torts of abuse of process, invasion of

privacy, intentional infliction of emotional distress, and prima facie tort against Plaintiff." [Doc. 43-1, pg. 7]  Based on substantially the same facts, Plaintiff alleged in his federal *Complaint* that Defendants violated the Fourth Amendment when they 1) used excessive force against him, and 2) unlawfully seized him.  [Doc. 1]  U.S. Const. amend. IV. Although resting on different legal theories and encompassing different elements, these claims clearly arise from "common nucleus of operative facts."  *See Carter*, 815 F.2d at 620 (holding that state and federal claims were the same "cause of action" where they were "grounded in the same facts").  Moreover, Plaintiff could have brought the latter claims in state court.  *See id.* at 621 (stating that "[s]tate courts have concurrent jurisdiction with federal courts over § 1983 actions" and that "[the p]laintiffs could have brought their federal claims in the state court action, or could have proceeded in the federal court in preference to the state court."); *Mascarenas Enterprises, Inc. v. City of Albuquerque*, 494 F. App'x 846, 855 (10th Cir. 2012) (stating that where "the state court would have had jurisdiction over the claims that [a plaintiff] attempted to bring in the second suit, . . . the second suit [is] precluded by res judicata.").

To the extent Plaintiff argues that this Court's ruling that the two suits were not "parallel proceedings" under the *Colorado River* doctrine means that the claims are not the same for claims preclusion purposes, [Doc. 52, pg. 1-2; Doc. 15] the Court disagrees. Generally speaking, "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (internal quotation marks and citation omitted).  "If the cases are truly parallel, then the state action will be a vehicle to resolve all issues raised in the federal

action." *Gentry v. Wayne Cty.*, No. 10-CV-11714, 2010 WL 4822749, at *2 (E.D. Mich. Nov. 22, 2010) (internal quotation marks and citation omitted).  But where the two actions have "have completely different legal bases," *Hayes v. City of Columbus*, No. 2:10 CV 0513, 2011 WL 2174973, at *3 (S.D. Ohio June 3, 2011), or constitutional issues are raised only in one proceeding, *id.* at *4, the two suits are not parallel.  Thus, the overlap between the claims must be such that "the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).  This test for parallel proceedings is clearly very different from, and much narrower than, the transactional, fact-based test for claim preclusion.  *Cf. Hayes,* No. 2:10 CV 0513, 2011 WL 2174973, at *4 (S.D. Ohio June 3, 2011) (stating that the two suits there were not parallel but that the court made no judgment on whether some claims might ultimately be barred by claim preclusion).

The Court concludes that the elements of claim preclusion are met and that the doctrine applies here.  It therefore turns to Plaintiff's assertion that the Court should decline to hold that Plaintiff's claims are precluded because Defendants acquiesced to the federal suit.

B.  Whether Defendants Waived Claim Preclusion or Acquiesced in the Federal Suit

"Acquiescence will defeat a [claim preclusion] defense." *Concerned Residents of S.F. N. v. Santa Fe Estates, Inc.*, 2008-NMCA-042, ¶ 27, 143 N.M. 811, 182 P.3d 794.  "One of the primary purposes of the claim preclusion doctrine is to protect a defendant from being harassed by repetitive actions based on the same claim.  This purpose is not

operative when a defendant agrees, expressly or impliedly, to split the claim." 18 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 131.24[1] (2013). "Acquiescence also occurs when a defendant allows two simultaneous actions on the same claim to proceed without objection." *Id.*; *Calderon Rosado v. Gen. Elec. Circuit Breakers, Inc.*, 805 F.2d 1085, 1087 (1st Cir. 1986) ("*Restatement (Second) of Judgments* § 26, comment a, illustration 1, gives as an example of acquiescence, a defendant who, while two actions on parts of the same claim are pending, fails to object to the claim splitting. If, after judgment enters on one of the two, the defendant then moves to dismiss the second on res judicata grounds, the motion should be denied, the Restatement indicates."). Plaintiff argues that Defendants both waived the claim preclusion defense when they agreed to dismissal of the *State Amended Complaint*, and acquiesced to the federal suit by failing to timely object to it. [Doc. 52, pg. 3, 10] *See Concerned Residents, Inc.*, 2008-NMCA-042, ¶ 30 (discussing waiver and acquiescence). The Court will first address acquiescence.

Based on the basic rule stated above, the absence of any objection at all to a second suit would constitute acquiescence. But what must be done to adequately object to claim splitting so as to prevent acquiescence? Two key New Mexico cases address this issue. In *Cagan v. Village of Angel Fire*, the New Mexico Court of Appeals held that the defendant had not acquiesced to two suits where the defendant had 1) "filed a motion for a protective order and motion to stay discovery in Case II, stating its intention to file a motion for summary judgment in Case II asserting the claims were barred by collateral estoppel and res judicata," (2) "filed its motion arguing that [the p]laintiffs were barred

by the order dismissing Case I with prejudice," and (3) "raised the affirmative defenses of collateral estoppel and res judicata in its answer."   2005-NMCA-059, ¶ 33, 137 N.M. 570, 113 P.3d 393 *disapproved of by Concerned Residents*, 2008-NMCA-042.   The defendant's motion for summary judgment based on claim preclusion was filed four months after initiation of the second suit. *Cagan*, 2005-NMCA-059, ¶ 5.  The court held that these "acts were sufficient to bring to the attention of the district court and [the p]laintiffs that the [defendant] objected to claim splitting." *Id.*

Three years later, the New Mexico Court of Appeals considered *Cagan* again.  In *Concerned Residents*, the defendant sought to preclude the plaintiffs' suit by asserting that it was barred by an earlier administrative judgment.  *Concerned Residents,* 2008-NMCA-042, ¶ 16.  The trial court denied the defendant's motion on the ground that the defendant had acquiesced to any alleged claim-splitting.  *Id.* ¶ 22.  The defendant appealed.  The plaintiffs argued on appeal that the defendant "acquiesced in claim-splitting and waived any [claim preclusion] defense by participating in the merits of the administrative appeals and in the contract action . . . , without making any claim-splitting objection." *Id.* ¶ 24.  Relying on *Cagan*, the defendant countered that "there could be no acquiescence or waiver because it asserted the defense of res judicata in its answer to [the plaintiffs'] complaint." *Id.* ¶ 28.  The court examined how and when the defendant had objected to claim splitting, noting that the defendant had stated in its answer that "[the plaintiffs'] complaint must be dismissed because it is barred by the doctrine of *res judicata* and/or collateral estoppel," *id.* ¶ 29, that this defense was asserted before final judgment was entered in the administrative matter, *id.*, and that the motion for summary

judgment based on claim preclusion was filed fourteen months after the start of the simultaneous actions. *Id*. ¶ 36. Finally, the defendant had "actively litigated both actions" for approximately fourteen months, and "none of [that litigation] was aimed at relief from the disadvantages to [the defendant] of claim-splitting." *Id*. ¶ 38.

The court first held that *Cagan* does not stand for the proposition that "including a [claim preclusion] affirmative defense in an answer is sufficient by itself to overcome any claim of acquiescence or waiver," stating instead that "it [is] the better policy to consider each case on its own particular facts." *Concerned Residents*, 2008-NMCA-042, ¶ 40. The court went on to hold that a defendant has a burden to object "expeditiously," stating that "[i]f a defendant sees two actions as detrimental to the defendant's interests, it should be incumbent on the defendant to specifically attack the claim-splitting by obtaining court relief at the earliest feasible point." *Id*. ¶ 41. Given the ways that the defendant had asserted claim preclusion and the timing of those assertions, the court then concluded that it "ha[d] considerable difficulty permitting [the defendant's] generally stated defense of [claim preclusion] to withstand [the plaintiffs'] acquiescence argument. [The defendant's] conduct was antithetical to the purpose for the doctrine of [claim preclusion], . . . , [to] protect litigants from the burden of multiple litigation and to promote judicial economy." *Id*. ¶ 42. This conclusion was based on the vagueness of the assertion of claim preclusion in the answer, the length of time between the initiation of the two suits and filing of a motion to dismiss based on claim preclusion, and defendant's conduct during that time.

The question here is, then, whether Defendants' pleadings and conduct, considered as a whole and in context, constitute acquiescence to Plaintiff's two suits.  Here, Defendant mentioned claim preclusion in a general way two times prior to the present *Motion*.  First, in a footnote to the *Motion to Dismiss in Lieu of Answer*, and second, in the *Answer* as one of twenty-six affirmative defenses.  [Doc. 6; Doc. 18]  Like in *Concerned Residents*, both assertions were vague and did not specify the two suits at issue.  *Id.* ¶ 29 (stating that "[a]t no time until its motion for summary judgment . . . did [the defendant] indicate to what the res judicata defense asserted in its answer specifically pertained.").  Although Defendants filed their *Motion for Summary Judgment Based on the Doctrine of Res Judicata* only forty-eight days after the state action was dismissed, it was filed nearly eighteen months after initiation of the federal suit.  In *Cagan*, where acquiescence was not present, the delay between initiation of the second suit and the filing of a motion based on claim preclusion was four months; in *Concerned Residents*, where acquiescence was present, the delay was fourteen months.  *Cagan*, 2005-NMCA-059, ¶ 5; *Concerned Residents*, 2008-NMCA-042, ¶ 38.  These undisputed facts weigh in favor of a finding that Defendants acquiesced to both of Plaintiff's suits.

However, five months after the federal *Complaint* was filed, Defendants moved for dismissal on the ground that this Court should abstain from exercising jurisdiction under the *Colorado River* or *Younger* doctrines.  [Doc. 6]  In that motion, Defendants argued, much like in the present *Motion*, that

> allowing two claims, which deal with the exact same subject matter, to proceed in two courts would be a large waste of judicial resources.  Plaintiff had both the choice of forum and the choice of claims when he filed his

state court complaint.  As referenced above, plaintiff knew he may allege federal claims because he referenced them in his state complaint.  Further, both complaints contain a section titled "facts common to all causes of action."  When compared, the factual allegations contained in the federal complaint are a nearly verbatim copy of the factual allegations contained in the state complaint.  More specifically, of the [twenty-two] factual contentions in the federal complaint, [eighteen] of them are identical, one is nearly identical, and three are not truly "fact" allegations, despite being contained in the factual allegation section.  In summary, the complaints are virtually identical with the exception of the detailed fourth amendment claims which follow the fact allegation section in the federal complaint.

[Doc. 6, pg. 2]  They went on,

the claims have the same factual basis and the claims directly overlap.  A piecemeal trial of these issues would not only be a waste of valuable judicial resources, but also unfairly multiply the costs of litigating, including attorneys' fees, expert costs, etc.  There is no cognizable reason why these claims should be tried separately.

[Doc. 6, pg. 4]

Finally, Defendants concluded by stating that

Plaintiff filed his state court action one year before filing this case.  At the time plaintiff filed his state court complaint, he knew that he might have federal claims, but he chose to file in state court.  No new facts have been developed which would change the underlying claims.  Plaintiff simply decided to bring a second claim over essentially the same material facts.  That second claim will result in a significant waste of judicial resources and prejudice the defendants by multiplying the costs of defending this matter.

[Doc. 6, pg. 8]

The Court concludes that, although Defendants did not expressly invoke the doctrine of claim preclusion in their arguments, the substance of this *Motion to Dismiss in Lieu of Answer* is sufficient to have notified Plaintiff of their objection to simultaneous suits, regardless of the specific doctrines named.  *See Barreto Rosa v. Varona-Mendez*, 393 F. Supp. 2d 122, 132 (D.P.R. 2005) (stating that the "defendants **expressly objected**

[to] plaintiff's splitting of claims between state and this federal court[] from the very beginning of the case" where the defendants had filed a motion for *Colorado River* abstention and argued "that they were being subjected to duplicative litigation in two courts"); *Marcano Arroyo v. K-mart, Inc.,* 81 F. Supp. 2d 301, 308 (D.P.R. 1999) ("The fact that the [c]ourt denied [the defendant's] motion [to dismiss based on *Colorado River* abstention] is of no moment.  The rule on objecting to claim splitting does not require that an objection be successful."); *Cagan*, 2005-NMCA-059, ¶ 34 (stating that the defendant's actions were "sufficient to make known its objection to [the p]laintiffs' attempt to maintain two actions on parts of the same claim"); *cf. Century Bank v. Hymans*, 1995-NMCA-095, ¶ 10, 120 N.M. 684, 905 P.2d 722 (stating that "the substance of the motion, not its title, controls").  Taken together with Defendants' other actions, this objection indicates that Defendants did not acquiesce to the federal action.

Plaintiff also argues that Defendants waived the claim preclusion defense by their response to Plaintiff's *Motion for Voluntary Dismissal of Case* in state court.  [Doc. 52, pg. 2-5]  He maintains that "the motion to dismiss expressly stated that the purpose of the dismissal with prejudice of the state case was so the parties could proceed to try this matter 'only once' in federal court," and that "'by pursuing only the federal matter,' Plaintiff . . . would drop all of his unique and independent state court claims."  [Doc. 52, pg. 2; Doc. 43-2]  The *Motion for Voluntary Dismissal* also discussed the discovery to date in the state case and that such discovery "is directly applicable in the parallel federal proceeding involving the individual defendants here and Plaintiff . . . concerning the incident in question."  [Doc. 43-2]  It also stated that, because the work on discovery

would be useful to the federal case, Defendants would not be harmed by dismissal of the state case.  [Doc. 43-2]

Plaintiff argues that Defendants "understood that Plaintiff . . . reserved his federal claims against them" and impliedly consented to continuation of the federal suit by 1) not objecting to the *Motion for Voluntary Dismissal of Case* [Doc. 52, pg. 12], and 2) litigating discovery issues in federal court after filing of the *Motion for Voluntary Dismissal of Case* in state court.  [Doc. 52, pg. 12]  However, by the time the *Motion for Voluntary Dismissal* was filed, Defendants had objected to duplicative suits several times and Plaintiff was on notice that the claim preclusion defense may be asserted.  That Plaintiff was clear in the *Motion for Voluntary Dismissal* that he wished the federal suit to continue does not alter those facts.  Nothing in Defendants' *Response* to Plaintiff's *Motion for Voluntary Dismissal* or the state court's order mentions continuation of the federal suit.  [Doc. 43-3; Doc 43-7]  It was Plaintiff's burden to foresee the possible effects on his case of a dismissal with prejudice.  Having notified Plaintiff that they objected to the federal suit, Defendants' failure to further object to Plaintiff's *Motion for Voluntary Dismissal* as well does not constitute a waiver of the defense.  *See Carter*, 815 F.2d at 622 (rejecting the plaintiffs' argument that they had a "strong basis" to believe their federal claims would survive, and stating, "The fact plaintiff[s] did not foresee the legal consequence of splitting [t]he[i]r cause of action has no bearing on the issues or the result herein." (internal quotation marks and citation omitted)).

Finally, the pleadings filed by Defendants between dismissal of the state action and the present *Motion* were 1) a reply pertaining to Defendants' motion to compel Rule

26 disclosures, 2) a corrected reply showing the correct title, and 3) a notice of completion of briefing on the motion to compel.  Although the parties did argue their motions at a hearing before a magistrate judge, these actions do not rise to the level of "considerable activity" or "vigorous participation" as seen in *Concerned Residents*. *Concerned Residents*, 2008-NMCA-042, ¶ 38.

Having concluded based on the undisputed facts that the elements of claim preclusion are satisfied and that Defendants did not waive the claim preclusion defense or acquiescence to multiple suits, the Court concludes that Defendants are entitled to summary judgment as a matter of law.

## III.   Conclusion

**WHEREFORE**, for the reasons stated herein, *Defendant's Motion for Summary Judgment Based on the Doctrine of Res Judicata* [Doc. 43] is **GRANTED**.

**SO ORDERED this 28th day of March, 2017.**

M. CHRISTINA ARMIJO
CHIEF UNITED STATES DISTRICT JUDGE